UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA JEAN REIS,

    Plaintiff,

v.                                    Case No. 1:18-cv-29
                                      Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI).

Plaintiff alleged a disability onset date of March 21, 2014. PageID.212. Plaintiff identified her disabling conditions as: shoulder pain; pain in both arms; needs new glasses; pain in feet; and, only two teeth on the bottom jaw. PageID.216. Prior to filing her application, plaintiff completed the 9th grade and had past employment as a long haul truck driver and a car parker. PageID.85-87, 217. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 20, 2017. PageID.57-65. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

### I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of March 21, 2014. PageID.59. At the second step, the ALJ found that plaintiff had the following severe impairments: osteoarthritic pain of the bilateral shoulders; and osteoarthritic pain and degenerative disease of the bilateral knees. PageID.59. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.61.

The ALJ decided at the fourth step that,

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except [sic]: work with simple, routine, and repetitive work instructions.

PageID.61. Neither party addressed an apparent error in the residual functional capacity (RFC), which states that plaintiff can perform light work "except: work with simple, routine, and repetitive work instructions." Based on their briefs, both parties agree that this stated exception is actually the relevant limitation, i.e., that plaintiff is limited to "work with simple, routine, and repetitive work instructions." *See* Plaintiff's Brief (ECF No. 11, PageID.406-407); Defendant's Brief (ECF No. 12, PageID.412).

The ALJ also found that plaintiff is capable of performing past relevant work, which does not require the performance of work-related activities precluded by her RFC. Specifically, the ALJ found that:

4

>The claimant is able to perform her past relevant work as a car parker-driver. In comparing the claimant's residual functional capacity with the physical and mental demands of her work, the undersigned finds that the claimant can perform it in the manner she actually did, as well as, in the manner it is generally performed.

PageID.64-65.

Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 21, 2014 (the date the application was filed) through January 20, 2017 (the date of the decision). PageID.65.

### III.   DISCUSSION

Plaintiff raised three issues on appeal:

**A.   The ALJ failed to consider and evaluate obesity.**

Plaintiff contends that the ALJ did not identify obesity as a severe or non-severe impairment even though "obesity had been diagnosed and multiple BMI calculations placed her in the obesity range." Plaintiff' Brief (ECF No. 11, PageID.401-402). Plaintiff also contends that "[t]he [ALJ's] lack of pertinent discussion in the decision gives rise to the inference that obesity was not considered at all." *Id*. at PageID.402.

Although the agency deleted obesity from the Listing of Impairments, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability. *See* SSR 02-1p (stating in pertinent part "we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. . . including when assessing an individual's residual functional capacity." (2002 WL 34686281 (Sept. 12, 2002)). While SSR 02-1p provides guidance for the ALJ's in evaluating the limiting effects of a claimant's obesity, the ruling does not create a separate procedure requiring the Commissioner to consider obesity in every case.

5

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006).

Here, the record reflects that the ALJ considered plaintiff's obesity in combination with her other impairments. The ALJ noted plaintiff's height (5'1") and weight (177 pounds), as well as plaintiff's testimony that she has problems with her legs and knees (*e.g.*, that she would sit in a recliner for the majority of the day, and is limited to standing for ten minutes, walking two blocks, and sitting for twenty minutes). PageID.62. The ALJ also found that while the medical evidence did not support the need of a cane for ambulation, plaintiff testified that she had been using a cane that she received from her niece. PageID.64. In addition, the record reflects that the ALJ considered opinions from physicians who noted plaintiff's BMI: Charles Arnold, M.D. (noting a BMI of 35.90) (PageID.63, 102, 104); and, Michael Amburgey, M.D. (noting a BMI of 35) (PageID.63, 111-112). The ALJ also reviewed Exh. 8F (treatment notes from the Family Medicine Clinic), which reflect plaintiff's height, weight, and BMI (PageID.63-64, 335, 340, 345). While the ALJ could have addressed plaintiff's obesity in greater detail, the record reflects that the ALJ considered the limiting effects of plaintiff's obesity in deciding the disability claim. Accordingly, plaintiff's claim of error should be denied.

> **B.     The ALJ erred in not incorporating limitations from all the medically determinable impairments, both severe and non-severe, into the RFC and erred in not considering the combined impact thereof.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically

determinable impairments.  20 C.F.R. § 416.945.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

Plaintiff contends that the ALJ's RFC determination is defective because it omitted key limitations.  First, the RFC contains no limitations concerning the use of foot pedals, even though there was evidence of plaintiff's age (over 55 years old and over 60 years old), knee degeneration, knee pain, and specific testimony that pressing down on vehicle pedals caused her intense knee pain.  Plaintiff's Brief at PageID.404.  In this regard, during the administrative hearing, plaintiff testified that she doesn't drive because she cannot use the pedals (gas, brake, clutch) and that "just pushing on a pedal drives me insane with my knees."  PageID.91.  While plaintiff complained about her knees, she admitted: that she never had surgery on her knees; that surgery had not been recommended; and that while her primary care doctor had recommended a specialist (an orthopedic doctor), no appointment had been made as of the date of the hearing.  PageID.92.

Second, the RFC did not contain any overhead reaching limitations, even though plaintiff had a shoulder impairment.  PageID.405.  In this regard plaintiff notes that the ALJ found a severe impairment of osteoarthritic pain of the bilateral shoulders (PageID.59).  Plaintiff also reported shoulder pain at a consultative examination (PageID.297, 301).

Third, the RFC did not include limitations with respect to avoiding temperature extremes, even though plaintiff had cold intolerance due to asthmatic bronchitis.  PageID.405. In this regard, plaintiff refers to a record from Gregg A. Patten, M.D., dated October 10, 2016. However, this record is far from definitive.  While plaintiff reported a persistent cough for one

year, Dr. Patten noted that plaintiff's chest x-ray "shows no disease and her spirometry today is surprisingly normal." PageID.356. The doctor thought that plaintiff's "cough and bronchitis are due to her smoking" and that "[t]here may be an element given her cold air intolerance of 'asthmatic bronchitis'". PageID.356-357.

The ALJ recognized plaintiff's additional claims of impairment, but noted that there was no opinion evidence to support her claims:

> As for the opinion evidence, in June 2014, the claimant underwent physical consultative evaluation with Ashok K. Kancharla, M.D. The claimant complained of pain in her knees, shoulder, and feet. The physical examination demonstrated painful, but full, range of motion the left shoulder. Otherwise, the claimant had normal range of motion throughout. She had normal strength with the bilateral upper and lower extremities. She had normal gait and station, coordination, and functional use. Neurologically, the claimant had normal sensation. She was able to ambulate without an assistive device. She was able to get on and off the examination table (Exhibit 1F). The undersigned gives weight to the assessment of Dr. Kancharla, to the extent consistent with the findings herein.
>
> The undersigned considered the July 2014 and January 2015, physical assessments by Charles Arnold, M.D., and George Walker MD, from the Disability Determination Services (DDS), indicating that the claimant had no severe physical impairment, and that her impairments did not result in significant limitations in your [sic] ability to perform basic work activities. Additionally, the May 2015, physical assessments of Michael Amburgey, M.D., and Richard Lawrence, M.D., from DDS indicated that the claimant could perform work at the medium exertional level (Exhibits 1A and 3A). The undersigned gives partial weight to the assessments from DDS. The medical evidence at the hearing and the testimony of the claimant support the findings herein that the claimant has physical impairments with light exertional functioning ability as provided in the adopted residual functional capacity and the additional provisions. Nevertheless, the assessments from DDS are consistent with the ultimate decision herein that the claimant is not disabled from work related activities.

PageID.62-63.

The ALJ also reviewed plaintiff's most recent examinations and treatments in 2016:

> It is reasonable that the claimant would be limited to the light exertional level based on the symptoms related to her physical impairments. Moreover, the medical

8

evidence and the record as a whole do not support the degree and severity of limitation as alleged by the claimant. In the May 2016, treatment records from the Community Health Center of Branch County, the physical examination indicated that neurologically, the claimant was grossly intact. She had greatly diminished pulses, but there were femoral pulses bilaterally. The claimant was to undergo a vascular Doppler of the lower extremities (Exhibit 5F /2). The follow up ultrasound arterial duplex Doppler of the bilateral lower extremities was negative with no significantly increased Doppler velocities or evidence of focal stenosis (Exhibit 6F/1).

The April 2016, office visit report from the Family Medicine Clinic indicated that the claimant had not seen a doctor for ten years. The claimant reported that she found pleasure in doing things she liked to do daily. For the review of her system, other than vaginal itching, the claimant reported normal cardiovascular, respiratory, gastrointestinal, and musculoskeletal conditions. The objective physical examination was normal (Exhibit 8F/4-5). The claimant had similarly report [sic] in September 2016. She had negative straight leg raise. She was to take Motrin as needed for her knee. The claimant said that her knee pain was better with Motrin (Exhibit 8F/10-17). In the records from the Hillsdale Pulmonary Clinic, the October 2016, office visit report indicated that the claimant [sic] no clubbing, cyanosis, or edema with the bilateral extremities. Neurologically, the claimant had normal gait and station, and her affect was cheerful (Exhibit 10F/1).

The records from the Center for Family Health reported that the claimant's musculoskeletal pain was occurring intermittently and fluctuating. Her pain was relieved with heat, ice, and over the counter pain medication of Motrin. The claimant was to continue with her treatment as needed (Exhibit 11F/2).

PageID.63.

Based on this record, substantial evidence supports the ALJ's decision that plaintiff was not disabled because she could perform her past relevant work as a car parker/driver. While the ALJ did not address plaintiff's possible cold air intolerance identified by Dr. Patten, nothing in the record indicates that this potential condition, or the pain in the shoulders, limited plaintiff from performing her past work as a car parker. When asked about her biggest problem in performing that work, plaintiff only mentioned problems with her knees pushing pedals. PageID.91-92. Substantial evidence supports the ALJ's determination that plaintiff's knee

condition, which was being treated with heat, ice and over the counter pain medication, was not disabling.  In summary, the ALJ's determination that plaintiff can perform her past relevant work is supported by substantial evidence.  While the ALJ's decision was lacking in some respects, a remand will serve no useful purpose in this case.  "No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."  *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989).  Accordingly, plaintiff's claim of error should be denied

### C. The ALJ's RFC is illogical on its face in relation to work instructions and the ALJ's discussion of pain medications is illogical.

Plaintiff contends that the ALJ's RFC is illogical because it requires that she "work with simple, routine, and repetitive work *instructions*."  PageID.61 (emphasis added).  Based on this limitation, plaintiff contends that this would require that a "job coach" be present to instruct plaintiff how to do her previous relevant work of driving and parking cars.  Plaintiff's Brief at PageID.406-407.  Plaintiff's claim is without merit.  The phrase "[s]imple, routine, repetitive work" essentially refers to "unskilled" work.  *See Allison v. Commissioner of Social Security*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000) ("We believe that the ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work.").

Defendant contends that the ALJ's use of the term "instructions" was "most likely a drafting error, to the extent it is error at all, and does not affect the decision."  Defendant's Brief (ECF No.12, PageID.418).  The Court disagrees that this was a mere scrivener's error, because the ALJ used this same restriction in the hypothetical question posed to the vocational expert (VE):

10

> Q. I'm going to ask you a similar person of the same age, education, vocational experience as the Claimant who would have a residual functional capacity for light work. *This work would involve jobs with simple, routine, repetitive work instructions.* Based on these limitations alone, could such a person perform the past work as a car parker?
>
> A. Yes, Your Honor.

PageID.94 (emphasis added). Neither the VE nor plaintiff's counsel objected to the form of the hypothetical question posed.

Contrary to plaintiff's contention, the Court does not find an RFC which limits a person to performing work which involves simple work instructions to be illogical. Other courts agree and have affirmed RFC's containing similar limitations. *See, e.g.*, *Faul v. Commissioner of Social Security*, No. 1:15-cv-1219, 2016 WL 5538093 at *2 (W.D. Mich. Sept. 30, 2016) (court affirmed ALJ's decision, which included a limitation that claimant "can only do simple unskilled work with simple, routine, repetitive work instructions"). *See also*, *Dettmer v. Berryhill*, No. CV 17-2296-JWL, 2018 WL 3304521 (D. Kan. July 5, 2018) (affirming ALJ's decision which found that the claimant had the capacity "to understand, remember, and perform only simple repetitive work instructions"); *Horning v. Berryhill*, No. 2:16-CV-00290-RHW, 2017 WL 1903111 at *3, 5-6 (E.D. Wash. May 9, 2017) (the court found no error in ALJ's RFC determination that the claimant "can understand, remember, and carry out simple routine repetitive work instructions"); and *Padlo v. Commissioner of Social Security*, No. 15-11130, 2016 WL 4536425 (E.D. Mich. Aug. 31, 2016) (substantial evidence supported ALJ's RFC which limited the claimant to work which involved "simple repetitive work instructions"). Accordingly, plaintiff's claim of error should be denied.

Next, plaintiff contends that the ALJ made "irresponsible" statements about the use of opioid pain medications which "rises to the level of playing Doctor." Plaintiff's Brief at PageID.406. Plaintiff contends that ALJ's observation that "the claimant's use of medications does not suggest the presence of an impairment" contains an implicit, fallacious idea "that pain is not serious unless one is prescribed and takes opioids." *Id*. Plaintiff's contention is without merit.

The ALJ addressed plaintiff's use of medication as follows:

> Additionally, the undersigned notes that the claimant's use of medications does not suggest the presence of an impairment, which is more limiting than found in this decision. Despite the complaints of allegedly disabling symptoms, there have been significant periods during which the claimant has not taken any medications for her symptoms. The claimant has not taken any narcotic-based pain relieving medications in spite of the allegations of quite limiting pain. She has been taking over the counter pain medications, which have been relatively effective in controlling the claimant's symptoms (*See* Exhibits 18F [sic] and 11F).

PageID.63-64. Contrary to plaintiff's contention, the ALJ was not "playing Doctor" in addressing plaintiff's use of medication. It is the ALJ's function to consider factors relevant to a claimant's symptoms, including "[t]he type, dosage, effectiveness and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]" *See* 20 C.F.R.§ 416.929(c)(3)(iv). Here, the ALJ found that plaintiff did not take any medication for her symptoms over "significant periods" of time, and that over the counter pain medications were relatively effective in controlling her symptoms. The use of mild pain medication undercuts complaints of disabling pain. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir 1990). Accordingly, this claim of error should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Entered: December 17, 2018                    /s/ Ray Kent
                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).